UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLI RENEE BRIMLEY,

    *Plaintiff*,

v.                               CASE NO. 10-CV-14140

COMMISSIONER OF             DISTRICT JUDGE ARTHUR J. TARNOW
SOCIAL SECURITY,              MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.    REPORT

#### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for Supplemental Security Income ("SSI")

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

benefits. This matter is currently before this Court on cross-motions for summary judgment. (Docs. 10, 15.)

Plaintiff was 38 years of age at the time of the most recent administrative hearing. (Doc. 8, Transcript at 10, 21, 23, 93.) Plaintiff's employment history includes work as a farm hand and as a loader/operator for a construction company. (Tr. at 116.) Plaintiff filed the instant claim on October 19, 2006, alleging that she became unable to work on February 1, 2001. (Tr. at 93.) The claim was denied at the initial administrative stages. (Tr. at 58.) In denying Plaintiff's claim, the Commissioner considered affective disorders and epilepsy (major or minor seizures) as possible bases for disability. (*Id.*) On April 7, 2009, Plaintiff appeared via videoconferencing before Administrative Law Judge ("ALJ") John S. Pope, who considered the application for benefits *de novo*. (Tr. at 7-22.) In a decision dated May 27, 2009, the ALJ found that Plaintiff was not disabled. (Tr. at 22.) Plaintiff requested a review of this decision on June 11, 2009. (Tr. at 6.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on September 24, 2010, when, after the review of additional exhibits[2] (Tr. at 4, 157-59, 348-51), the Appeals Council denied Plaintiff's request for review. (Tr. at 1-3.) On October 15, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d

3

at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record,

regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

**D.    ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since October 11, 2006, the alleged onset date. (Tr. at 12.) At step two, the ALJ found that Plaintiff's fibromyalgia, depression, and degenerative disc disease were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 12-15.) At step four, the ALJ found that Plaintiff could not perform any of her past relevant work. (Tr. at 20-21.) The ALJ also found that on the date the application was filed, Plaintiff was a younger individual age 18 to 49. (Tr. at 21.) At step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 15-20.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 22.)

  **E.** **Administrative Record**

A review of the relevant medical evidence contained in the administrative record indicates that an MRI of the cervical spine taken on October 11, 2004, was "negative." (Tr. at 173.) One year later, an MRI of the cervical spine taken on October 14, 2005, showed "[s]mall left-sided disk herniations at the C5-C6 and C6-C7 levels without evidence of spinal stenosis, cord narrowing or foraminal narrowing." (Tr. at 169-70, 339-40.)

Plaintiff was evaluated by Hugo Lopez Negrete, M.D., of the Neurosurgery Division of Greater Flint MRI on October 31, 2005. (Tr. at 167-68.) Dr. Negrete concluded that the "[e]tiology of this ladies [sic] pain is unknown to me [and] I doubt very much we are dealing with a spinal problem"; Dr. Negrete did "not believe the findings on the MRI explain the extensive pain this patient complaints of." (Tr. at 168.)

A chest x-ray taken on April 16, 2006, was "normal." (Tr. at 166.) An MRI of Plaintiff's head taken on August 4, 2006, was "negative." (Tr. at 161.) On July 25, 2006, a total body bone

7

scan was "negative." (Tr. at 176.) An MRI of the head taken on August 2, 2006, was also "negative." (Tr. at 262, 341.)

After seeing Plaintiff in July 2006 and ordering a battery of tests, on August 31, 2006, Jolanta Sobotka, M.D., noted that Plaintiff was "on Zonegram for her seizures and it seems to be controlling her well." (Tr. at 175, 175-84.) Dr. Sobotka further noted that the "[x]-rays and the bone scan did not show any significant changes." (Tr. at 175.)

Plaintiff was examined by Lance Lemon, M.D., on October 25, 2006, regarding double vision. (Tr. at 186-90.) Dr. Lemon noted that Plaintiff had "convergence insufficiency" that was "likely related" to a traumatic brain injury that Plaintiff suffered in May 2006 following a seizure. (Tr. at 186.) Dr. Lemon stated that there "is some hope for spontaneous resolution" but noted that "a slow recovery may be the best case scenario given the remoteness of the injury." (Tr. at 186.)

On November 20, 2006, a Request for Medical Advice regarding Plaintiff's mental functional capacity was not completed because "[a]lthough clmt is alleging depression she is not receiving mental health tx [and] without the completed forms we will not order a psych CE." (Tr. at 197.) A Psychiatric Review Technique completed on November 24, 2006, also concluded that there was "insufficient evidence" to provide an assessment. (Tr. at 206.)

A Physical Residual Functional Capacity ("RFC") Assessment completed on November 27, 2006, concluded that Plaintiff had no exertional, postural, manipulative, visual, communicative or environmental limitations other than avoiding exposure to hazards. (Tr. at 199-202.) It was noted that all physical tests were normal, that Plaintiff "takes no medication for fibromyalgia" and that water therapy had been recommended. (Tr. at 200.) It was further noted that there was no treating or examining source statement on file regarding Plaintiff's physical capacities. (Tr. at 204.)

On December 30, 2006, Leonard J. McCulloch, M.A., of the Disability Determination Service, examined Plaintiff and concluded that Plaintiff has chronic and severe major depression. McCulloch assessed a GAF score of 50 and determined that the prognosis for Plaintiff was guarded. (Tr. at 225-26.) McCulloch noted that, as to stream of mental activity, Plaintiff was "spontaneous, logical and organized with normal speech." (Tr. at 224.)

A Mental RFC Assessment completed on January 10, 2007, by Leonard C. Balunas, Ph.D., concluded that Plaintiff was not significantly limited in the ability to remember locations and work-like procedures or the ability to understand and remember very short and simple instructions, but that Plaintiff was moderately limited in the ability to understand and remember detailed instructions. (Tr. at 228.) Plaintiff was unlimited in sustained concentration and persistence except that she was found to be moderately limited in the ability to maintain attention and concentration for extended periods. (*Id*.) Plaintiff was unlimited in her social interaction abilities and adaptation except for being moderately limited in her ability to respond appropriately to changes in the work setting. (Tr. at 229.) The assessment concluded that "[m]ajor depression restricts her to unskilled work involving 1, 2 or 3 step instructions with limited need for sustained concentration and no more than occasional changes in the work setting." (Tr. at 230.) A case analysis completed by Dr. Balunas the same day concluded that Plaintiff "is able to perform unskilled work." (Tr. at 232.)

A Psychiatric Review Technique completed on January 10, 2007, by Dr. Balunas diagnosed Plaintiff with affective disorders, i.e., anhedonia or pervasive loss of interest in almost all activities, sleep disturbance, decreased energy, and difficulty concentrating or thinking. (Tr. at 234, 237.) Under the "B" criteria, it was concluded that Plaintiff had moderate restriction of daily living activities, mild difficulties in maintaining social functioning, and moderate difficulties in

9

maintaining concentration, persistence or pace. (Tr. at 244.) It was also noted that, with respect to depression, "[r]eported signs and symptoms do not support qualifier 'severe.'" (Tr. at 246.)

On January 23, 2007, A. Borders-Robinson, D.O., examined Plaintiff and concluded that Plaintiff's seizures were "well controlled" by prescription medication but that Plaintiff had "sciatica, the left is more affected" and "severe insomnia, anxiety and depression." (Tr. at 256.) Medication was prescribed to promote sleep and exercise and joint injections were recommended for the sacroiliac pain. (Tr. at 257.)

On January 26, 2007, Kashif Khan, M.D., examined Plaintiff and concluded that she had fibromyalgia, left sacroiliac joint dysfunction, chronic pain disorder and "mild" cervical degenerative disc disease. (Tr. at 253, 336.)

On February 5, 2007, an MRI of the lumbar spine showed "mild" degenerative changes involving the lumbar spine that were "most evident" at L4-L5 and L5-S1. (Tr. at 337, 346.) There was "[n]o evidence of disk herniation, central canal stenosis or foraminal stenosis[.]" (Tr. at 338, 247.)

On June 12, 2007, Dr. Borders-Robinson noted that Plaintiff's seizure disorder continued to be "well-controlled" with medication and that Plaintiff continued to have "chronic pain, currently seeing psychiatry for this." (Tr. at 249.) Dr. Borders-Robinson concluded that "[n]o further changes will be made in her care" and that he "will see her back in one year." (Tr. at 249.)

On February 13, 2007, Dr. Borders-Robinson noted that Plaintiff had been diagnosed by Dr. Khan with sacroiliac joint dysfunction and that Plaintiff should follow Dr. Khan's recommendations regarding pain medication and trial of a TENS unit. (Tr. at 251.)

On March 6, 2009, Plaintiff was examined by Gary Branch, D.O., who found that her "[b]ilateral elbow pain [was] consistent with lateral epicondylitis" and recommended physical therapy. (Tr. at 320.)

On March 24, 2009, Dr. Barbara Gurden completed a physical medical assessment of Plaintiff's ability to do work-related activities and concluded that Plaintiff could sit, stand, or walk for 2 hours each day, but only 2 hours "combined" in an 8-hour workday. (Tr. at 293.) Dr. Gurden also concluded that Plaintiff could occasionally and carry lift 10 pounds, could occasionally perform finger manipulation, could frequently grasp, but could never push with either hand and that Plaintiff could use her feet and legs for foot controls on the "left only." (Tr. at 294.) Dr. Gurden also found that Plaintiff could occasionally bend, reach, squat, and kneel, but could never twist, climb, crawl or stoop. (Tr. at 295.) Dr. Gurden also found that Plaintiff was moderately or completely restricted as to environmental limitations. (Tr. at 295.) Dr. Gurden based these conclusions on the presence of disc disease, chronic hand pain, and diagnoses of sciatica and fibromyalgia by Plaintiff's previous physician. (Tr. at 296.)

On April 21, 2009, Douglas W. Bentley, Ed.D., Licensed Psychologist, of the Inner Access Therapy Center, LLC, concluded that Plaintiff "is totally disabled." (Tr. at 325.) Dr. Bentley diagnosed Plaintiff with major depression recurrent with psychotic features and personality change due to her chronic pain and he assessed a GAF score of 30. (Tr. at 325.) Dr. Bentley also concluded that Plaintiff is moderately limited in all mental areas and markedly limited in the ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and week without interruptions from psychologically based symptoms and perform at a consistent pace, to interact

11

appropriately with the public, to accept instructions and respond appropriately to criticism from supervisors, to travel to unfamiliar places or use public transportation, and to set realistic goals or make plans independently of others. (Tr. at 327-28.)

Plaintiff testified at the administrative hearing held on April 7, 2009, that she has an unrestricted drivers license and that she completed some college courses but did not receive a degree. (Tr. at 28.) She further testified that her job as a loader ended in 2001 because her "boss lost the business." (Tr. at 29.) Plaintiff testified that she plans meals, does laundry, does dishes and other things for her children, and that she spends "[m]ost of the day" on these tasks. (Tr. at 36-37.) She also testified that she lies down in the afternoon for one and a half to two hours because she is "exhausted." (Tr. at 37.) She then greets her children after they return from school, her family has the evening meal together, and she then watches television with her children. (Tr. at 37-38.) Plaintiff is able to take care of her own grooming needs, grocery shop, sweep, and walk with her children. (Tr. at 38-39.) Plaintiff testified that she can lift 10 pounds, can walk for three hours and can stand for two to three hours in an eight-hour day. (Tr. at 42-43.)

At the administrative hearing, the ALJ asked the vocational expert ("VE") to assume a person with Plaintiff's background:

> Limited to light, unskilled work involving only one, two, or three-step instructions, involving little need to sustain concentration, and no more than occasional changes in the work setting, and also must avoid all exposure to hazards.

(Tr. at 50.) The VE responded that such a person could perform the 8,000 cafeteria attendant, 6,000 counter attendant, and 1,000 usher jobs in the State of Michigan. (Tr. at 50-51.) In addition, such a person could perform the 250,000 unskilled sedentary jobs available in the State of Michigan. (Tr. at 51.)

**F.     Analysis and Conclusions**

**1.     Legal Standards**

The ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 15-20.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

**2.     Substantial Evidence**

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 10.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that in determining Plaintiff's mental functional capacity, the ALJ "is ignoring the opinions of two examining psychologists[s] [Dr. Bentley and the DDS examining psychologist, Mr. McCulloch] in favor of two non-examining opinions [Dr. Balunas and the DDS non-examining psychologist] and based upon the very same evidence documenting

13

severe impairments." (Doc. 10 at 15-18.) Defendant responds that Mr. McCulloch's report was consistent with the ALJ's findings and that Dr. Bentley's report was not consistent with the record as a whole and did not contain reasoning that would explain the limitations noted. (Doc. 15 at 11-12.) As noted by Defendant, Plaintiff does not challenge the ALJ's physical functional capacity findings. (Doc. 15 at 9 n.2.)

I suggest that Mr. McCulloch's assessment is not inconsistent with the ALJ's findings. Mr. McCulloch concluded that Plaintiff has chronic severe major depression, assessed a GAF score of 50, and noted that as to stream of mental activity Plaintiff was "spontaneous, logical and organized with normal speech." (Tr. at 224-26.) Mr. McCulloch did not assess Plaintiff's mental functional capacities and thus his opinion cannot be considered inconsistent with the ALJ's findings regarding her mental functional capacities.

As to Dr. Bentley, I note at the outset that his conclusion that Plaintiff is "totally disabled" (Tr. at 325) is not entitled to controlling weight since "[i]t is well settled that the ultimate issue of disability is reserved to the Commissioner." *Kidd v. Commissioner*, 283 Fed. App'x 336, 341 (6th Cir. 2008); *Gaskin v. Commissioner*, 280 Fed. App'x 472, 475-76 (6th Cir. 2008).

The next question is whether the ALJ's decision to give Dr. Bentley's opinion little weight (Tr. at 14-15) was made in accordance with the required findings and is supported by substantial evidence.

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating

14

physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). *See also Rogers*, 486 F.3d at 242 (stating that the "treating physician rule," which provides that "greater deference is usually given to the opinions of treating physicians than to those of non-treating physicians," is a key governing standard in social security cases). "Moreover, when the physician is a specialist with respect to the medical condition at issue, . . . her opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). If the ALJ declines to give controlling weight to a treating source's opinion, then he must use the following factors to determine what weight the opinion should be given: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544. Where the ALJ "failed to conduct the balancing of factors to determine what weight should be accorded these treating source opinions . . . , [t]his alone constitutes error, as '[a] finding that a treating source medical opinion . . . is not entitled to controlling weight [does] not [mean] that the opinion should be rejected.'" *Cole v. Comm'r of Soc. Sec.,* 652 F.3d 653, 660 (6th Cir. 2011) (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009)). This rule applies when the treating source opinion is a *medical* opinion; however, "[w]hen a treating physician instead submits an opinion on an issue reserved to the Commissioner – such as whether the claimant is 'disabled' or 'unable to work'– the opinion is not entitled to any

15

particular weight." *Turner v. Comm'r of Soc. Sec.*, 381 Fed. App'x 488, 492-93 (6th Cir. 2011) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d), 1527(e), 416.927(e); Soc. Sec. Ruling 96-5p; and *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)).

A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." S.S.R. 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "This requirement is not simply a formality; it is to safeguard the claimant's procedural rights." *Cole*, 2011 WL 2745792, at *4. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

In the instant case, the opinion by Dr. Bentley upon which Plaintiff relies is a form with a coversheet concluding that Plaintiff is "totally disabled." (Tr. at 325.) In addition, the remaining

four pages consist of checkmarks finding Plaintiff either moderately or markedly limited in all functions. These findings are not supported by any remarks, test results, or other explanations for the universal limitations found. I suggest that such a form is "an opinion on an issue reserved to the Commissioner" that is "not entitled to any particular weight." *See Turner,* 381 Fed. App'x at 492-93.

Furthermore, even if the underlying limitations found by Dr. Bentley are considered to be proper opinion evidence, I suggest that the ALJ's stated reasons for declining to give it significant weight are sufficient to satisfy the regulations. I suggest that the ALJ correctly concluded that Dr. Bentley's opinion was inconsistent with the objective medical evidence. Plaintiff was treated with prescription medicine for her depression but was never hospitalized and never participated in any individual or group therapy. (Tr. at 257.) There is so little evidence regarding Plaintiff's mental condition that, in November 2006, assessment of her mental functional capacity was not possible due to the fact that she was "not receiving mental health tx" and there was "insufficient evidence." (Tr. at 197, 206.) This modest treatment indicates that her mental condition was not disabling. *See Myatt v. Comm'r of Soc. Sec.*, 251 Fed. App'x 332, 334-35 (6th Cir. 2007) (modest treatment regimen is inconsistent with a finding of total disability). Further, Plaintiff's own testimony regarding her abilities supports the ALJ's findings, i.e., that she has a driver's license, plans meals, does laundry, does dishes and other things for her children, watches television with her children, takes care of her own grooming needs, grocery shops, sweeps, and walks with her children. (Tr. at 28-29, 36-39.) Finally, the ALJ's findings are consistent with the more specific functional analysis done by Dr. Balunas and his findings that Plaintiff's "[m]ajor depression restricts her to unskilled work involving 1, 2 or 3 step instructions with limited need for sustained concentration and no more than occasional changes in the work setting." (Tr. at 230, 234-244.) I therefore

17

suggest that substantial evidence supports the ALJ's decision to rely on other evidence of record rather than the unsupported conclusions of Dr. Bentley as to Plaintiff's mental functional capacity.

### 3.     Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.    REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail

with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

|  |  |
|---|---|
|  | s/ **Charles E Binder** |
|  | CHARLES E. BINDER |
| Dated: December 28, 2011 | United States Magistrate Judge |

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  December 28, 2011                                     By        s/Patricia T. Morris
                                                                                    Law Clerk to Magistrate Judge Binder